**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DARRYL WAYNE HILL,                     No. C 05-4572 SI (pr)

        Petitioner,                **ORDER DENYING PETITION FOR A
                                       WRIT OF HABEAS CORPUS**

    v.

BEN CURRY, warden,

        Respondent.
_____/

**INTRODUCTION**

     Darryl Wayne Hill, an inmate at the Correctional Training Facility in Soledad, California, filed this <u>pro se</u> action seeking a writ of  habeas corpus pursuant to 28 U.S.C. § 2254. Respondent filed an answer.  Hill thereafter requested and received a stay of these proceedings so that he could exhaust state court remedies as to a claim respondent had argued was unexhausted.  After petitioner exhausted state court remedies, the stay was lifted, respondent filed a supplemental answer, and Hill filed a traverse.  The parties also later filed further supplemental briefs at the court's request.   All claims have now been briefed on the merits and the habeas petition is ready for a decision.

**BACKGROUND**

     On April 26, 2000, around 9:00 a.m., Eleanore Tulloh left her residence with Henry Petersen to shop. When they returned about an hour later, they saw that there was a bicycle by the front door, the glass portion of the front door was broken and the side door was open.

**United States District Court**
For the Northern District of California

1    Petersen entered the house, retrieved a phone, and gave it to Tulloh to call the police.   Petersen

2    saw Hill standing in Tulloh's driveway, looking at her front door.  Petersen asked Hill if Petersen

3    could help him, and Hill responded, "No.  Why?"  RT 695.  Petersen stated that Hill appeared

4    interested in something by the doorway to Tulloh's house.  Hill said "no" and walked away

5    shortly before the police arrived.  RT 695-696.

6         Officer Mitchell Haramaki responded to the radio call, saw Hill approximately two blocks

7    from Tulloh's house, and asked to speak with him.  Hill was cooperative but denied any

8    knowledge of the bicycle.  Haramaki searched Hill incident to arrest.  He found a gold cross in

9    Hill's left pocket but, believing the cross to be Hill's property, put it back in Hill's pocket.

10   Officer Glen Davies, who also responded to the call, searched Hill's fanny pack and found a

11   screwdriver and vise grips.  Both officers testified that these tools commonly are carried by

12   burglars.

13        The doorway to Tulloh's residence had flat pry marks approximately the size of a

14   standard screwdriver blade.  Davies retraced the path he believed Hill took from Tulloh's home

15   to the point at which Hill had been stopped, and found watches and necklaces in the bushes

16   along the way.  Petersen identified the jewelry as that which was stolen, but he did not find a

17   gold cross Tulloh had told him was missing.  This was the first time Davies was notified of a

18   missing gold cross.

19        Haramaki transported Hill to the police station and noticed that Hill appeared to be

20   struggling in the back seat of the patrol car.  At the station, Haramaki conducted a booking

21   search and noticed that the cross was no longer in Hill's left pocket.  He later found the cross

22   underneath the back seat of the patrol car.

23        Tulloh and Petersen testified that when they entered Tulloh's home following the

24   burglary, they saw a half-eaten piece of cheese on her washing machine, and neither Tulloh nor

25   Petersen had put the cheese there.  Petersen showed the cheese to a police officer because he

26   thought it might be evidence.  Davies testified that he saw the cheese, knew it was evidence, and

27   knew it had teeth marks.  He did not collect it nor have it tested for DNA, although he did point

28   out the cheese to the crime technician in case she wanted to test it.  Davies explained that DNA

tests are not typically performed after burglaries. Davies further testified that he did not believe testing was necessary because of the other inculpatory evidence. The crime scene technician did not recall the cheese in this case, but stated that the police department's policy was to do DNA tests only in crimes involving serious bodily injury due to the cost of such testing. The technician further testified that a piece of cheese would not be collected from a crime scene unless it was a material piece of evidence in a crime involving bodily injury.

Tulloh's neighbors, Edwine and Reggy Meeng, were walking through the neighborhood the morning of the burglary when they were passed twice by a man on a bicycle. Edwine Meeng later identified that bicycle as the one found in front of Tulloh's home. Edwine and Reggy Meeng both described the man as chubby African-American wearing a checkered sweater. In court, both identified Hill as the man they had seen on the bicycle.

Eva Csoboth lived near Tulloh's residence and testified that, on the morning of the burglary, she saw a man riding a bicycle and saw a van that she had not seen before. Suspecting a burglary, she called the police, and described the man on the bicycle as lean and wearing jeans, a cap, and a t-shirt or a jacket. She was unable to see the man's face. At the preliminary hearing, Csoboth described the man as black and having a large build, and she stated that Hill's size was "sort of similar" to the size of the man on the bicycle.

Hill was convicted in Alameda County Superior Court of first degree burglary and receiving stolen property. Sentence enhancement allegations regarding prior convictions were found true. On February 15, 2002, he was sentenced to a term of forty years to life in prison.

## JURISDICTION AND VENUE

This court has subject matter jurisdiction over the petition for writ of habeas corpus under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the challenged conviction occurred in Alameda County, within this judicial district. 28 U.S.C. §§ 84, 2241(d).

## EXHAUSTION

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state

judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court.  28 U.S.C. § 2254(b), (c).  State judicial remedies have been exhausted for the claims presented in the petition.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable."  Id. at 409.

**DISCUSSION**

A.      Failure To Collect And Preserve The Cheese As Evidence

Hill claims that he was deprived of due process by the bad faith failure of the police to collect and preserve the half-eaten piece of cheese found in the residence.  Hill contends that because identity was the primary issue in this case, and because there were no fingerprints or eyewitnesses conclusively establishing him as the perpetrator, the cheese would have been the only evidence available to exonerate him, and the police knew that the cheese was exculpatory. Hill further argues that the police ceased the investigation and focused solely on his guilt once they ran a background check on him and discovered he was involved in a 1980 police shooting. He contends that the police planted Tulloh's gold cross on him in order to frame him.

The government has a duty to preserve evidence whose exculpatory value is apparent before it is destroyed and that is of such a nature that the defendant cannot obtain comparable evidence by other reasonably available means.  See California v. Trombetta, 467 U.S. 479, 489 (1984); see, e.g., id. at 481 (due process did not require that police preserve breath samples of suspected drunk drivers for results of breath-analysis tests to be admissible).  A different analysis is used if the evidence is only potentially useful.  See Illinois v. Fisher, 540 U.S. 544, 547-48 (2004).  There is no due process violation unless there is bad faith conduct by the police in failing to preserve potentially useful evidence.  Arizona v. Youngblood, 488 U.S. 51, 58 (1988). "[R]equiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, i.e., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant." Id.; see. e.g., id. at 58-59 (no due process violation in law enforcement's failure to properly refrigerate and timely test rectal swab and clothing worn by victim on night of sex assault; defendant was free to argue to jury that a test might have been exculpatory but the police did not have a constitutional duty to perform any particular tests); Richter v. Hickman, No. 06-15614, slip op. 3657, 3675-77 (9th Cir. Apr. 9, 2008) (post-trial retrieval of floorboard found to have exculpatory value does not entitle petitioner to retroactive determination that police

1    violated his due process rights by inadvertently losing or misplacing the evidence; petitioner

2    must show bad faith on part of police or prosecution).

3            Neither Trombetta nor Youngblood imposed a duty to collect evidence, but only to

4    preserve it in limited situations. See Miller v. Vasquez, 868 F.2d 1116, 1119 (9th Cir. 1988).

5    "Since, in the absence of bad faith, the police's failure to preserve evidence that is only

6    potentially exculpatory does not violate due process, then a fortiori neither does the good faith

7    failure to collect such evidence violate due process." Id. at 1120.

8            The trial court denied Hill's mid-trial motion to dismiss and post-trial motion for new trial

9    based on the failure to collect and preserve the cheese.  On appeal, the state appellate court found

10   the claim meritless under Youngblood due to Hill's inability to demonstrate bad faith on the part

11   of law enforcement officers:

12           Hill contends bad faith is the only explanation for the failure to collect the
             cheese. However, the evidence technician and an investigating officer testified
13           that for reasons of cost the department did not do DNA testing unless the crime
             involved serious injury to a person.  While the investigator acknowledged that
14           dental testing could establish identity, she said the department would not
             collect a piece of cheese in a case not involving a crime against persons.  Most
15           importantly, there was no reason for the police to believe the cheese might
             have exculpated Hill, who was identified by two witnesses as the man riding
16           a bicycle found next to the front door the burglar broke in through, and who
             was in possession of burglar's tools and an item of jewelry taken from the
17           victim when he was detained in the immediate area of the burglary shortly
             after it occurred.
18
             Hill also contends bad faith was shown by a declaration he filed in
19           support of his new trial motion, accusing the arresting officers of harassing
             him after his arrest and their discovery of his extensive criminal record.
20           However, these allegations do not implicate the officers' conduct during the
             crime scene investigation, or tend to suggest the officers realized the cheese
21           might have exonerated Hill.

22   Cal. Ct. App. Opinion, p.2.

23           The California Court of Appeal did not unreasonably apply controlling Supreme Court

24   precedent in rejecting Hill's claim.  The cheese was not known to be exculpatory but instead was

25   only potentially exculpatory evidence, i.e., it could have been tested and those test results could

26   have been inculpatory (if the test result matched Hill's DNA or teeth marks) or exculpatory (if

27   the test results did not match Hill's DNA or teeth marks).  Because no Supreme Court case

28   requires collection of evidence, habeas relief is precluded by 28 U.S.C. § 2254(d), which

requires denial of a habeas petition unless the state court's decision is contrary to or an unreasonable application of Supreme Court precedent. Even if the Supreme Court cases were read to impose a duty to collect as well as to preserve evidence already collected, there would be a due process violation under <u>Youngblood</u> only if law enforcement acted in bad faith by not collecting it. The state court reasonably determined that Hill had not shown bad faith. Although an officer and a crime scene technician both recognized the cheese had evidentiary value, that alone did not mean that the cheese was exculpatory or that their failure to collect it showed bad faith. The police had a cost-containment policy reason for not collecting or testing the cheese in a routine burglary without bodily injury. Also, as the appellate court noted, there was strong circumstantial evidence implicating Hill. Two victims and two neighbors placed Hill at or near the scene of the crime. A bicycle, identified as the one Hill had been riding, was found at the entry of the burglarized residence. Hill was detained in the immediate area of the burglary, shortly after the burglary. He was carrying a screwdriver and the doorway to the victim's residence had flat pry marks approximately the size of a standard screwdriver. He also had a cross that had been taken from the residence. Other jewelry from the residence was found in the bushes along the assumed route between the burglarized house and the place where he was apprehended. The California court of appeal also reasonably rejected as unfounded Hill's assertion that the police officers harassed him after his arrest and attempted to frame him as the perpetrator once they learned of his involvement in a prior police shooting.

As in <u>Trombetta</u>, <u>Youngblood</u>, and <u>Miller</u>, the uncollected cheese was "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." <u>Miller</u>, 868 F.2d at 1120. The state appellate court's denial of Hill's claim was not contrary to nor an unreasonable application of Supreme Court precedent because Hill could not demonstrate bad faith on the part of police in failing to collect and preserve the cheese. Hill is not entitled to habeas relief on this claim.

/   /   /

/   /   /

7

B.      Instructional Error Claim

Hill claims that his Fifth, Sixth, and Fourteenth Amendment rights to a fair jury trial and due process were violated by the special jury instruction given at the prosecutor's request.  The instruction read: "Neither party is required to collect all evidence that may be presented in a case or perform any or all tests that may be presented in a criminal case." RT 1055.  Hill argues that the instruction misstated the law because law enforcement had an obligation to collect the cheese.  Hill also asserts that the instruction lowered the prosecution's burden of proof by relieving the officers of the responsibility for collecting and preserving the cheese.

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction "by itself so infected the entire trial that the resulting conviction violates due process." Estelle v. McGuire, 502 U.S. 62, 72 (1991).  The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. Id.  In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process.  United States v. Frady, 456 U.S. 152, 169 (1982) (citing Henderson v. Kibbe, 431 U.S. 145, 154 (1977)).

The state appellate court held that there was nothing "objectionable about the jury instruction Hill challenges.  It is an accurate statement of the law, and a reasonable refinement of CALJIC No. 2.11, adapted to the circumstances of this case."  Respondent's Exh. E (Cal. Ct. App. Opinion, p. 2).

The instruction was a correct statement of law.  It was consistent with Trombetta's holding that law enforcement is not required to gather all evidence. 467 U.S. at 486.  It was also consistent with the rule from Youngblood and Miller that a failure to collect and preserve potentially useful evidence did not violate due process unless law enforcement acted in bad faith. Trombetta, 488 U.S. at 58; Miller, 868 F.2d at 1119-20.  Hill's appellate counsel even acknowledged on appeal that the instruction was a correct statement of law but argued that the instruction was incomplete because it did not state the limitation that the police must collect material evidence that might be expected to play a significant role in the defense case. Respondent's Exh. E, p. 17.  As discussed in the preceding section, law enforcement officers did

8

not know that the cheese was exculpatory, nor did they act in bad faith in failing to collect and preserve the cheese.  The most that the police could have known was that the cheese could be subjected to tests that might demonstrate Hill's innocence.  Because the cheese was only potentially exculpatory, an instruction stating that the police must collect and preserve exculpatory evidence would have been irrelevant and would have had no effect on the verdict.  The prosecution's requested instruction did not lower the prosecution's burden of proof or so infect the trial that it amounted to a due process violation.  The state appellate court's denial of Hill's claim was not contrary to nor an unreasonable application of Supreme Court precedent.  Hill is not entitled to habeas relief on this claim.

C.    Prosecutorial Misconduct Claims

Hill claims that his Fourteenth Amendment right to due process was violated during closing argument when the prosecutor vouched for police witnesses, commented on defense evidence, and commented on Hill's failure to take the stand.

The appropriate standard of review for a prosecutorial misconduct claim in a federal habeas corpus action is the narrow one of due process and not the broad exercise of supervisory power.  Darden v. Wainwright, 477 U.S. 168, 181 (1986).  A defendant's due process rights are violated when a prosecutor's acts render a trial fundamentally unfair.  Id.; Smith v. Phillips, 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor").

1.    Vouching For Witnesses

A prosecutor may not vouch for the credibility of a witness.  United States v. Sanchez, 176 F.3d 1214, 1224 (9th Cir. 1999).  "Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony."  United States v. Weatherspoon, 410 F.3d 1142, 1146 (9th Cir. 2005) (citation and quotation marks omitted).

The prosecutor argued that Officers Davies and Haramaki would not risk their jobs by

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

lying under oath.  The prosecutor stated, "what's the motive for Officer Haramaki to get up there and to lie about this case, and risk his job for him (indicating), a person he doesn't even know from Adam?  What's the motive for Officer Davies to get up there, and he told you he had 18 years' experience on the force.  He's probably close to retirement.  Yeah, I'm going to risk my pension, my retirement for you?  Think about it."  RT 981.  The prosecutor's comments were improper because there was no evidence presented at trial that an officer who lied on the witness stand would lose his job.  Although these comments were improper, they did not render the trial fundamentally unfair.  The absence of a curative instruction weighs in favor of a finding that the comment made the trial fundamentally unfair; however, several other factors weigh against a finding that the comments made the trial fundamentally unfair.  The case against Hill was strong, see United States v. Young, 470 U.S. 1, 19 (1985), the comments did not misstate or manipulate the evidence, see Darden v. Wainwright, 477 U.S. at 182, and the comments were not part of a pattern of misconduct, see Lincoln v. Sunn, 807 F.2d 805, 809 (9th Cir. 1987).  The comments that an officer would not risk his job or pension by lying on the witness stand did not amount to a due process violation.

The prosecutor argued that the police officers told the truth when testifying.[1]  The prosecutor's statement that the officers' statements were truthful was not improper.  A prosecutor may not offer a personal opinion of a witness' veracity but may argue that the record supports the witness' credibility.  United States v. Daas, 198 F.3d 1167, 1178-79 (9th Cir. 1999), cert. denied, 531 U.S. 999 (2000); United States v. Necoechea, 986 F.2d 1273, 1279 (9th Cir. 1993).  The prosecutor asserted that the evidence indicated that the officers did not "have it out for" Hill because they testified that Hill was cooperative when stopped by the police.  The prosecutor did no more than argue that the record supported the officers' credibility.  This argument did not

---

[1]The prosecutor stated, "[a]nd another thing about these officers, you know, if these officers were such bad people, they just had it out for Mr. Hill, then why not just say he was acting belligerent, he was cursing at us, he was calling us all types of names, he was being rude?  Why not just say that?  What did they say?  No.  He was cooperating with us.  What?  If they had it out for him, why would you just say he was cooperating, he was being an all right guy?  If they had it out for him, why would they just plant all that stuff on him?  You know why?  Because they don't have it out for him, because it's the truth."  RT 985.

**United States District Court**
For the Northern District of California

1    amount to a due process violation.

2           The prosecutor described Hill's apparent actions on the day of the burglary.  Hill contends

3    were impermissible argument about materials not in evidence.[2]  Prosecutors have wide latitude

4    during closing arguments, and they may make reasonable inferences based on the evidence

5    presented.  United States v. Molina, 934 F.2d 1440, 1445 (9th Cir. 1991).  Here, the prosecutor's

6    argument that Hill cased the neighborhood, was inside Tulloh's house, and stashed the stolen

7    jewelry were reasonable inferences based upon the evidence presented through the officers' and

8    neighbors' testimony.  These reasonable inferences were not misconduct.

9

10          2.    Comments On Defense Evidence And Objections

11          In closing argument, the prosecutor stated, "why did the defense call Ms. Csoboth? . . .

12   Like she had something to say?  It's funny, because she testified that she really didn't remember

13   anything."  RT 981.  The prosecutor quoted portions of the cross-examination of Ms. Csoboth

14   and commented on her failure to finish her responses to questions regarding Hill's appearance.

15   RT 981-982.  The prosecutor's comments were permissible argument that the witness was not

16   credible.  See Portuondo v. Agard, 529 U.S. 61, 69-71 (2000).  The prosecutor's remarks were

17   not an unjustified personal attack on the defense witness' ability to remember events, but rather

18   were permissible comment on the state of the evidence and did not amount to misconduct.

19          The prosecutor criticized defense counsel's objections.[3]  A prosecutor may not attack

20

21          ─────────────────

22          [2] The prosecutor stated, "[a]nd in the Defendant's pocket they find a piece of the loss that
     he tried to get rid of.  He left out of there, he's walking in this direction, and he stashed that
23   stuff."  RT 976.

24          "Well, we know Darryl Hill was in that house . . . .  And he was casing the neighborhood
     earlier while he rode up and down in the neighborhood."  RT 988.

25          "He was in the house.  There's no doubt about that.  None whatsoever."  RT 1042.

26          [3]In closing arguments, the prosecutor stated, "[b]ut all of a sudden we get objection,
     objection, beyond the scope beyond the scope.  He did not want you to hear that.  He did not
27   want you to hear that his client had admitted that the tools were his . . . .  You heard objection,
     objection.  It's what happened.  It's what's in the police reports . . . .  But defense wants to plant
28   this planting issue which just isn't there.  And you can tell by that objection that they don't truly
     believe."  RT 984, 985.

defense counsel's legitimate trial tactics.  See United States v. Frederick, 78 F.3d 1370, 1379-80 (9th Cir. 1996).   Respondent concedes misconduct in the criticism of defense counsel's objections and argues instead that Hill cannot demonstrate that this misconduct was so prejudicial as to render his trial fundamentally unfair.  The court agrees.   These comments occurred during the crucial trial stage of closing arguments, and there was no curative instruction, which weigh in favor of finding that the misconduct was prejudicial.  On the other hand, the criticism only occurred with regard to one of defense counsel's objections about ownership of the burglary tools, and there was significant circumstantial evidence of Hill's guilt. The prosecutor's criticism of the defense did not render the trial fundamentally unfair.

### 3.    Alleged *Griffin* Error

Hill claims that the prosecutor committed error under Griffin v. California, 380 U.S. 609, 615 (1965), by commenting on his failure to testify.   Hill asserts that the following closing argument by the prosecutor was improper: "I challenge the Defendant or, actually, defense counsel to tell you what's the motive for Officer Haramaki to get up there and to lie about this case, and risk his job for him (indicating), a person he doesn't even know from Adam?" RT 981.

The Fifth Amendment of the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself."  Where a prosecutor on his own initiative asks the jury to draw an adverse inference from a defendant's silence, or to treat the defendant's silence as substantive evidence of guilt, the defendant's privilege against compulsory self-incrimination is violated.  See Griffin, 380 U.S. at 615.  The test to determine whether a Griffin violation has occurred is "whether the language used was manifestly intended or was of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify. . . .There is a distinction between a comment on the defense's failure to present exculpatory evidence as opposed to a comment on the defendant's failure to testify." United States v. Mende, 43 F.3d 1298, 1301 (9th Cir. 1995) (internal quotation marks and citations omitted).  Griffin also does not preclude a prosecutor from "fairly responding to an argument of the defendant by adverting to that silence."  See United States v. Robinson, 485 U.S.

25, 34 (1988).

Hill does not show that this statement made the trial fundamentally unfair.  The comment was not extensive, and the prosecutor made the comment only once.  The prosecutor did not stress Hill's silence as guilt, but rather suggested that the absence of defense evidence leant credibility to the officer's testimony.  Additionally, the statement does not evince an attempt to violate Hill's Fifth Amendment rights.  The prosecutor corrected himself when he started down the path to Griffin error – "I challenge the defendant or, actually defense counsel . . ." – so that he did not actually challenge Hill to testify, but instead challenged the defense to explain Officer Haramaki's motive to perjure himself.  Taken in context, the prosecutor was commenting on the general lack of evidence corroborating the defense frame-up theory rather than commenting on Hill's failure to testify.  See Guam v. Ojeda, 758 F.2d 403, 407 (9th Cir. 1985).

The California court's silent rejection of Hill's prosecutorial misconduct claims was not contrary to or an unreasonable application of clearly established Supreme Court authority.  Hill is not entitled to habeas relief on his prosecutorial misconduct claims.

4.    Instructional Error Claim Re. Defendant's Silence

In an claim closely related to his Griffin error claim discussed in the preceding section, Hill claims that his right to due process was violated by a jury instruction on adoptive admissions, especially because he did not testify.  The challenged instruction concerned adoptive admissions based on silence in the face of an accusation.  See RT 1060-1061; CALJIC 2.71.5.[4]

---

[4]The challenged instruction stated:

Evidence of an oral admission of the Defendant not made in court should be viewed with caution. [¶] If you should find from the evidence that there was an occasion when the Defendant, 1, under conditions which reasonably afforded him an opportunity to reply; [¶] 2, failed to make a denial in the face of an accusation, expressed directed to him or in his presence, charging him with the crime for which this Defendant is on trial, or tending to connect him with its commission; and [¶] 3, that he heard the accusation and understood its nature, then the circumstances of his silence and conduct on that occasion may be considered against him as indicating an admission that the accusation thus made was true.

RT 1060-61.

United States District Court
For the Northern District of California

Hill asserts that the trial court disregarded the special use note for this pattern instruction that the "instruction must not be given in a situation where failure to reply is based upon defendant's constitutional right to remain silent." CALJIC 2.71.5 use note. Hill links this alleged instructional error to the alleged <u>Griffin</u> error discussed in the preceding section.

The instruction was irrelevant surplusage. The instruction was not legally incorrect if the facts had supported it, i.e., if Hill had remained silent in the face of a pre-arrest accusation at the crime scene. The Fifth Amendment privilege against self-incrimination is not infringed by comments on a defendant's nonassertive conduct before trial begins unless the conduct was an assertion of the defendant's Fifth Amendment rights. <u>See</u> <u>Franklin v. Duncan</u>, 884 F. Supp. 1435, 1446 (N.D. Cal. 1995) (citing <u>Doyle v. Ohio</u>, 426 U.S. 610, 619 (1976)). However, neither Hill nor respondent asserted that Hill had done anything at the crime scene that could be construed to be an adoptive admission. The instruction did not apply to the facts of this case and was irrelevant surplusage.[5]

Hill's supposition that the jury may have understood the argument to apply to his failure to testify improperly focuses on one instruction in isolation rather than the instructions as a whole. <u>See</u> <u>Boyde v. California</u>, 494 U.S. 370, 378 (1990). When the instructions as a whole are considered, it is clear that the jury was not reasonably likely to apply the challenged instruction in a way that violates the Constitution. The adoptive admission instruction followed shortly after the instruction that a defendant had a constitutional right not to testify, and the instruction that the jury could not draw any inference from the defendant's decision not to testify. <u>See</u> RT 1059-61; CALJIC 2.60, 2.71.5. There is no reason to depart from the presumption that jurors have followed the court's instructions. <u>See</u> <u>Francis v. Franklin</u>, 471 U.S. 307, 324 n.9 (1985). <u>See also</u> <u>Richardson v. Marsh</u>, 481 U.S. 200, 206 (1987)(referring to "the almost invariable assumption of the law that jurors follow their instructions"). Neither defense counsel

---

[5]Henry Petersen's testimony came close but did not show an adoptive admission by Hill. Petersen testified that when he asked Hill if he could help him, Hill responded, "'No. Why?'" and when Petersen followed up with, "'Well, you seem to be interested in something up in front of the house up by the window and the doorway there,'" Hill "told [him] no in a gruff sort of way" and walked away. RT 695-96.

United States District Court
For the Northern District of California

nor the prosecutor objected to the use of the adoptive admission instruction.  See RT 962.  Defense counsel specifically highlighted that Hill did not have any obligation to testify and that his non-testimony could not be held against him.  RT 1024.   Lastly, it is not realistic to think that the jury tied the adoptive admission instruction to the prosecutor's closing argument; in light of the instruction on a defendant's right not to testify, no reasonable jury would have thought the prosecutor's closing argument amounted to an accusation to which a defendant "failed to make a denial."  See RT 1060.  The adoptive admission jury instruction, considered in the context of the overall charge to the jury, did not violate due process.   The California state court's silent rejection of this claim was not contrary to nor an unreasonable application of Supreme Court precedent.  Hill is not entitled to habeas relief on this claim.

D.      Ineffective Assistance Of Trial Counsel

        Hill claims that trial counsel was ineffective in failing to make a Pitchess motion on the testifying officers, failing to call certain witnesses to testify, failing to call the jury's attention to certain evidence, and failing to object to the jury instruction on adoptive admissions.  Traverse, p. 18-20.

        The Sixth Amendment right to counsel guarantees effective assistance of counsel.  See Strickland v. Washington, 466 U.S. 668, 686 (1984).  The benchmark for judging any claim of ineffectiveness is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.  Id.  A habeas petitioner must establish two things to prevail on a Sixth Amendment ineffectiveness claim: (1) that counsel's performance fell below an "objective standard of reasonableness" under prevailing professional norms, id. at 687-688; and (2) that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694.  A difference of opinion as to trial tactics does not automatically amount to ineffective assistance.  See Brodit v. Cambra, 350 F.3d 985, 994 (9th Cir. 2003), cert. denied, 542 U.S. 925 (2004).

        As to the first prong, the relevant inquiry is not what defense counsel could have done,

United States District Court
For the Northern District of California

but rather whether the choices made by defense counsel were reasonable.  See Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998), cert. denied, 525 U.S. 1159 (1999).  Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  See Strickland, 466 U.S. at 689.

### 1.   Failure To File A Pitchess Motion

Hill contends that trial counsel should have filed a Pitchess motion on Officers Haramaki and Davies to support Hill's contentions that the police were corrupt and planted the gold cross on Hill.  Traverse, p. 18.  California criminal defendants may compel discovery of police officers' personnel files by filing a Pitchess motion supported by affidavits showing good cause, materiality, and a reasonable belief that the agency has the information at issue.  Cal. Evid. Code § 1043(b)(3); see generally Pitchess v. Superior Court, 11 Cal.3d 531 (Cal. 1974).

Pitchess motions are grounded in state law but implicate a defendant's due process rights to exculpatory evidence.  Harrison v. Lockyer, 316 F.3d 1063, 1065-66 (9th Cir.), cert. denied, 538 U.S. 988 (2003).  A prosecutor is obligated to reveal exculpatory evidence when it is material to the defense.  Brady v. Maryland, 373 U.S. 83, 86 (1963).  To establish a Brady violation, a petitioner must demonstrate that the evidence was favorable as exculpatory or impeachment evidence, that the prosecution willfully or inadvertently suppressed the evidence, and that the non-disclosure prejudiced the petitioner.  Strickler v. Greene, 527 U.S. 263, 281-82 (1999).  This standard is also applicable when a petitioner claims ineffective assistance due to counsel's failure to make a Pitchess motion.  Osumi v. Giurbino, 445 F. Supp. 2d 1152, 1163 (C.D. Cal. 2006).  "[M]ere speculation regarding evidence possibly contained in the arresting officers' personnel files is manifestly insufficient to demonstrate [a] petitioner was in any manner prejudiced by trial counsel not filing a Pitchess motion."  Id. (citing Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir. 1997)).

Hill's conclusory speculation that Haramaki's and Davies' personnel files contained evidence of police corruption and framing of innocent people is insufficient to meet his burden

16

of demonstrating that trial counsel's assistance was ineffective on this point.  Hill's failure to show that there was evidence of police misconduct to be found leads to a failure to show deficient performance and resulting prejudice.  Cf. Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996), cert. denied, 519 U.S. 1142 (1997) (failure to take futile action can never be deficient performance).

### 2.   Failure To Call Witnesses

Hill next contends that his defense counsel was ineffective in not calling sergeant O'Connell and officer Reusche to testify at trial.  O'Connell was of interest to Hill because he made a radio report from the crime scene that none of the stolen items had been found on Hill's person.  Reusche was of interest because he failed to photograph the piece of cheese.

Trial counsel's failure to present probative, noncumulative evidence in support of a chosen defense strategy is deficient performance absent a reasonable tactical justification. Alcala v. Woodford, 334 F.3d 862, 870-71(9th Cir. 2003).  Hill is unable to demonstrate that either of these officers would present probative, noncumulative testimony.

Sergeant O'Connell had reported over the police radio that none of the stolen items had been found on Hill's person.  Hill suggests that this testimony would demonstrate that he did not have the stolen gold cross on him at the time he was stopped, and therefore (Hill reasons) that Officer Haramaki planted the evidence on him at a later time.  The problem for Hill is that sergeant O'Connell's proposed testimony would have been cumulative and unhelpful.  Officer Haramaki testified that he found the gold cross on Hill, but returned it to Hill on the assumption that the cross belonged to Hill.  RT 871.  Sergeant O'Connell's anticipated testimony–that he reported over the radio that no stolen property was found on Hill–would have been cumulative on the point that the officers did not know at the time of the initial search that Hill was not the owner of the gold cross he had in his possession.

Sergeant Reusche's testimony also was cumulative and unhelpful.  Hill states that Officer Reusche should have been called to explain why he did not photograph the cheese when he was at the residence taking photographs of the crime scene.  There was other evidence that the cheese

existed but had not been collected or tested.  The crime scene technician testified that her job was to process crime scenes, collect evidence, and take photographs.  There is no suggestion that Officer Reusche's testimony would differ from the crime scene technician's testimony.  The exculpatory value, if any, in the cheese would only be revealed if the cheese had been tested; photographs would prove nothing about whether the cheese had been bitten by Hill.  Insofar as he wanted to explore why the cheese had not been collected by officer Reusche, Hill has not shown that counsel would have been able to develop any testimony that was not cumulative to the other law enforcement witnesses' testimony that cost control concerns led to the decision not to collect or test the cheese.

3.      Failure To Present Documentary Evidence

Hill claims that trial counsel rendered ineffective assistance by failing to call to the jury's attention a signed document from homeowner Tulloh stating that the stolen gold cross was found in the bushes.  Although the record before this court does not include that document, the court transcript indicates that Tulloh signed a document prepared by a police officer stating that the chain on which the cross normally was kept was found in the bushes the day of the burglary.  CT 42, 44.  Tulloh clarified her written statement by testifying that the cross was normally kept on a chain but slid off easily; the chain was found in the bushes, but she did not know where the cross itself was found.  CT 42-44.  The document would not have demonstrated that Hill did not have possession of the stolen gold cross.  Trial counsel's failure to present the document to the jury was not deficient performance and did not prejudice Hill.

4.      Failure To Object To Jury Instruction

Finally, Hill asserts that trial counsel's failure to object to the jury instruction on adoptive admissions amounted to ineffective assistance.  This claim fails because Hill is unable to show prejudice from the failure to object to the instruction.  In light of the proper instruction on the defendant's right not to testify, Hill has not shown there was a reasonable probability that, but for counsel's failure to object to the irrelevant instruction on adoptive admissions, the result of

18

the proceeding would have been different.

In sum, Hill is unable to satisfy one or both prongs of the <u>Strickland</u> test for the sub-parts of his ineffectiveness claim.  The state court's denial of his ineffective assistance of counsel claim was not contrary to or an unreasonable application of Supreme Court precedent.  He is not entitled to habeas relief on this claim.

E.   <u>Ineffective Assistance Of Appellate Counsel</u>

Hill claims that appellate counsel was ineffective in failing to raise the issue of <u>Griffin</u> error on appeal and failing to file a reply to the Attorney General's brief as allegedly promised. Hill also contends that appellate counsel failed to adequately investigate his case.

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right.  <u>See</u> <u>Evitts v. Lucey</u>, 469 U.S. 387, 391-405 (1985).  Claims of ineffective assistance of appellate counsel are reviewed according to the standard set out in <u>Strickland</u>.  A defendant therefore must show that counsel's advice fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. <u>Miller v. Keeney</u>, 882 F.2d 1428, 1434 & n.9 (9th Cir. 1989) (citations omitted).

Appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant.  <u>See</u> <u>Jones v. Barnes</u>, 463 U.S. 745, 751-54 (1983).  The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy. <u>See</u> <u>Miller</u>, 882 F.2d at 1434.  Appellate counsel therefore will frequently remain above an objective standard of competence and have caused his client no prejudice for the same reason–because he declined to raise a weak issue.  <u>Id.</u>

Hill contends that appellate counsel was ineffective for not raising the issue of <u>Griffin</u> error on appeal as allegedly promised.  <u>See</u> Traverse, Exh. E (appellate counsel's letter to Hill stating that "[i]f your recollection is correct, I will raise [the <u>Griffin</u> error] issue on appeal if there was an objection, and by habeas corpus if there was no objection.") It turned out that no objection to the alleged <u>Griffin</u> error had been made at trial.  Counsel's letter indicates that

<b>United States District Court</b><br>For the Northern District of California

United States District Court
For the Northern District of California

counsel believed it was better to raise the issue on habeas rather than direct appeal if no objection had been made.  Hill has not shown that belief was misguided, especially in light of California's appellate rule on waiver of error as to which objection has not been made at trial. Further, the <u>Griffin</u> error claim was a weaker issue and counsel was not ineffective for weeding it out to concentrate on the stronger issues.  The <u>Griffin</u> error was claim was without merit, because, as discussed above, the adoptive admissions jury instruction was proper.  Appellate counsel did not have a constitutional duty to raise the weak issue simply because Hill wanted him to do so.

Hill next contends that appellate counsel was ineffective for not filing a reply to the Attorney General's brief on appeal as promised.  A reply brief is not required under state law and Hill has not shown any arguments that should have been made in a reply brief that would have had a reasonable probability of leading to a different outcome for his appeal.  By its very nature, a reply brief does not raise new issues but merely responds to the opponent's arguments. The evidence of Hill's guilt was strong.  Appellate counsel filed a thorough opening brief arguing that there had been a bad faith failure of law enforcement to collect and preserve the cheese and challenging the prosecutor's requested special instruction on the collection of evidence. Respondent's Exh. C.  There was not a reasonable probability that, but for appellate counsel's failure to file a reply brief, Hill would have prevailed on appeal.

Lastly, Hill claims that appellate counsel failed to adequately investigate his case and merely copied trial counsel's motion for a new trial.  Although Hill sees the commonality as indicating a lack of effort by appellate counsel, the similarity of a motion for new trial and appellate brief is not surprising or reflective of ineffective assistance.  Hill fails to identify any additional arguments that appellate counsel could have raised that would have led to a reasonable probability of a different outcome on appeal.  Hill does not demonstrate prejudice under the second prong of <u>Strickland</u>.

The state court's denial of Hill's claim of ineffective assistance of appellate counsel was not contrary to nor an unreasonable application of Supreme Court precedent.  Hill fails to demonstrate that appellate counsel was ineffective in failing to raise the issue of <u>Griffin</u> error on

1    appeal, failing to file a reply brief, or failing to adequately investigate his case.

2

3    F.    Motion For Appointment of Counsel

4          After the briefing was completed, Hill moved for appointment of counsel to represent him

5    in this action.  A district court may appoint counsel to represent a habeas petitioner whenever

6    "the court determines that the interests of justice so require and such person is financially unable

7    to obtain representation." 18 U.S.C. § 3006A(a)(2)(B). The decision to appoint counsel is within

8    the discretion of the district court.  See Chaney v. Lewis, 801 F.2d 1191, 1196 (9th Cir. 1986),

9    cert. denied, 481 U.S. 1023 (1987).  Appointment is mandatory only when the circumstances of

10   a particular case indicate that appointed counsel is necessary to prevent due process violations.

11   See id.  Based on the materials in the court file, it does not appear that appointment of counsel

12   is required in this action to prevent a due process violation.   The motion for appointment of

13   counsel is denied. (Docket # 28.)

14

15                                  **CONCLUSION**

16          For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.  The clerk

17   shall close the file.

18   DATED: May 8, 2008                    _____
                                           SUSAN ILLSTON
19                                         United States District Judge

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California